(Judge Burrows of the seventh circuit, sitting in place of Judge Winch.)

STATE EX REL. SYLVESTER V. MCMAHON, ETC. v. RICHARD J. MCKENZIE. ET AL., ETC.

1. SPECIFICATIONS FOR BIDS MUST NOT LEAVE A DISCRETION IN ACCEPTING.

Before bids are invited for a public building, the commission having the matter in charge must make the specifications sufficiently definite and certain as to material that there will be no discretion left with the commission in the acceptance of the "lowest bid," and if the choice amount to a monopoly alternative varieties should be specified so that there may be actual competition.

[For other cases in point, see 2 Cyc. Dig. "Contracts," §§ 2924-2952.—Ed.]

2. POWER OF JUDGE TO APPOINT BUILDING COMMISSIONERS NOT LEGISLATIVE OR EXECUTIVE.

Acts 97 O. L. 111 and 98 O. L. 53 giving judge of court of common pleas authority to appoint members of a courthouse commission and to fix their pay, are not unconstitutional because they confer legislative or executive powers upon judicial officers.

3. LEGALITY OF BID RESERVING MONEY TO BE EXPENDED BY BUILDING COMMISSIONERS.

In inviting bids for a public building, it is unlawful for the building commission to require all bidders to include in their total bids an arbitrary sum which the commission reserves the right to expend, at its discretion, for particular items that are not of such nature as to preclude competition.

[Proofs of this decision and syllabus were submitted to Judge Henry and corrected.—Ed.]

APPEAL from Cuyahoga common pleas court.

**B. C. Starr,** for plaintiff.

**C. W. Stage,** for defendants.

HENRY, J.

In this appeal it is sought to enjoin the Cuyahoga courthouse commission from entering into contract with Andrew Dall & Son, for the construction of a courthouse in said county.

The first ground alleged is, that the acts under which this commission is organized (97 O. L. 111; 98 O. L. 53; Rev. Stat. 794-1; Lan. 1754) are unconstitutional, because they attempt to confer legislative and executive powers upon judicial officers, in requiring a judge or judges of the common pleas court to appoint and fix the salaries of the four members of the commission other than the county commissioners.

This contention was not strenuously urged in argument before us, and if it were, we should be content with the views expressed by the learned judge in the opinion below, vindicating the constitutionality of these laws.

It is complained secondly, that the commission's invitation for bids is fatally defective, in that it undertook to suppress competition as to the items of statuary, hardware, etc., by requiring all bidders to include in their total bids, arbitrary sums aggregating some $98,000 to cover these items, which amount, more or less, the commission reserves the right to expend at discretion therefor.

If this is a means of getting $98,000 out of the county treasury and into the commission's hands for future discretionary expenditure, it clearly has no warrant in law. If such is not its object, we see no reason for requiring this, or any other amount of money for these items to be included in the bids. The duties sought to be imposed upon the successful bidder, with respect to the items in question, ought not to require the cost thereof to be included in the bids of persons who in no event are to provide them. Such a procedure is both awkward and ambiguous.

There is nothing in Rev. Stat. 794 (Lan. 1753), when properly interpreted, to prevent reserving these items for further lawful action by the commission in procuring them, in so far as their artistic character is such as to preclude their purchase by competitive bidding; for work of a necessarily noncompetitive nature may, no doubt, be contracted for without that procedure. When, however, this characteristic inheres merely in the design, as distinguished from the final workmanship, the competitive principle applies to the latter, and must be followed. And this, we think, is peculiarly true of hardware to be specially designed for this structure, and perhaps also of certain other excepted items. In short, we hold, as hereinafter pointed out, that there must be competitive bidding in all cases when competition is at all admissible. And competition, where it is admissible, cannot, without plain necessity for postponement, be deferred to a date later than that upon the main contract, in view of the provisions of Rev. Stat. 794 (Lan. 1753). In construing, however, the specifications on which the proposed contract in this case must be founded, we are of the opinion that the sum of $98,000 to be included in the bids for these items cannot of itself operate as an appropriation of that amount, though in extending a new invitation for bids, the means employed for accomplishing the end in view, so far as that end is admissible, ought to be rid of any room for doubt or argument in this behalf.

State v. McKenzie.

It is further urged that the competition in this case was illusory and unlawful, because it reserved to the commission a discretion, after opening the bids, to determine which of the several kinds of material named in the specifications, to wit, limestone, sandstone and granite, should, in fact, be used, and also because it impliedly reserved to the commission a further discretion after opening the bids and fixing upon one of these kinds of material, to select which of the several varieties of that material as specified by bidders, pursuant to requirment of the specifications, should likewise be used.

The commission, in the exercise of the discretion so reserved, has, in fact, since the bids were opened, selected granite as the main material to be used, and, in undertaking to accept Andrew Dall & Sons' bid, has likewise selected that variety of granite known as Pink Milford, as the particular sort of granite to be used. There were bids filed and opened for each of the three kinds of material, limestone, sandstone and granite, respectively, but the lowest bid was not for granite. There were several bids for granite; but Andrew Dall & Sons' bid was not the lowest for that kind of material. There were several bids for Pink Milford granite, and Andrew Dall & Sons' bid was the lowest for that variety of granite. But the selection of granite as the kind of material and the selection of Pink Milford granite as the particular variety thereof, were not made until after the bids were opened. Is this procedure warranted by law?

Revised Statute 799 (Lan. 1763), provides that contracts relating to public buildings "shall be awarded to, and made with, the person or persons who offer to perform the labor and furnish the material at the lowest price." This section applies to aggregate bids of the sort here under consideration. Combinations of partial bids fall under the somewhat different provisions of Rev. Stat. 794 (Lan. 1753).

It is objected, however, on behalf of the defendant, that Rev. Stat. 799 (Lan. 1763) applies only to boards of county commissioners, and not to this building commission, composed, though it is, of four other members, in addition to the county commissioners.

Three cases are cited in support of this view, namely: *Wood Co. (Comrs.)* v. *Pargillis*, 6 Circ. Dec. 717 (10 R. 376), affirmed without report, in *Wood Co. (Comrs.)* v. *Pargellis*, 53 Ohio St. 680; *State* v. *Marion Co. (Comrs.)* 39 Ohio St. 188, and *Boren* v. *Darke Co. (Comrs.)* 21 Ohio St. 311.

With regard to *Wood Co. (Comrs.)* v. *Pargillis, supra*, it is enough to say that the dictum therein, to the effect that certain of the sections of the Revised Statutes embraced in Chap. 1, title 6, entitled "public

buildings," being Rev. Stat. 782 to 803 (Lan. 1741 to 1769) inclusive. are inapplicable to the proceedings of a special courthouse commission, was wholly unnecessary to the decision of that case, and no reason whatever is set forth in the opinion to justify the dictum in question.

With regard to *State* v. *Marion Co.* (*Comrs.*) and *Boren* v. *Darke Co.* (*Comrs.*), *supra,* it is true that they identify Rev. Stat. 795 to 799 (Lan. 1759 to 1763), with corresponding sections of the act of April 27, 1869 (66 O. L. 53), which was plainly restricted in application to boards of county commissioners.

Revised Statute 794 (Lan. 1753) of the same chapter is now, however, significant, as bearing upon the present scope and application of the subsequent sections. The last-named section opens with the words:

"When any board of commissioners, board of trustees, officers, or board of directors of the state, or of any county, township, city, town, village, school or road district of the state, or of any public institution belonging to the same, or any common council or other municipal authority, who are now or at any time shall be authorized to contract or engage for the erection, repair, alteration, or rebuilding of any statehouse, courthouse," etc.

These words seem broad enough to comprehend all public authorities, including this commission, unless otherwise expressly provided by law. The entire section is to be construed in connection with the following sections, and they with it. This seems to be the effect of the decision in *State* v. *Marion Co.* (*Comrs.*), *supra,* which holds that:

"Section 794 [Lan. 1753] provides for letting contracts, in certain cases and under certain conditions, to separate bidders representing different trades, in respect to which the provisions of that section, and not Sec. 799 [Lan. 1763] apply. In all other cases the provisions of the latter section govern."

The chapter of the Revised Statutes, entitled "Public Buildings," is thus designed manifestly to cover the entire subject, except where it is inconsistent with other express provisions of statute. The provisions regarding county buildings to be erected by the county commissioners are equally applicable to this commission, whose other members are acting with the county commissioners and performing the duties that were formerly imposed upon them alone. It is true that this commission may act affirmatively with the concurrence of but a minority of the county commissioners; but its votes and proceedings are by law required to be recorded upon the journal of the county commissioners, and, it is acting for the county in a distinct but entirely similar organic capacity to that of the county commissioners themselves. It is not to be presumed that

State v. McKenzie.

the larger and more responsible duties which called the commission into existence should be attended with an abolition of the safeguards provided by law for the conduct of smaller enterprises of precisely the same kind. Such is by no means the apparent intention of the legislature, and the opposite construction, being at least permissible, with respect to this section, as now found in the codified laws, it must prevail.

It is objected further by the defendants that even if Rev. Stat. 799 (Lan. 1763) applies, as we hold it does, still the decided cases warrant the conclusion that there may be a reservation of the choice of materials until after the bids are opened, whereupon quality, as well as price, may be looked to in determining who is the lowest bidder. Particular reliance is placed on the decisions of the circuit, or Supreme Court, or both, in *Ampt* v. *Cincinnati*, 9 Circ. Dec. 690 (17 R. 516), affirmed, without report, in *Ampt* v. *Cincinnati*, 60 Ohio St. 621; *State* v. *Toledo* (*Bd. of Ed.*), 7 Circ. Dec. 338 (14 R. 15), and *Polhamus* v. *Board of Ed.* 11 Circ. Dec. 366 (21 R. 257, 259).

But an examination of these cases shows that there was something essentially noncompetitive, or but imperfectly competitive, in the subject-matter under consideration, in every instance, to wit: a heating system, a fireproofing system, or a waterworks pumping system. In the case affirmed by the Supreme Court, without report, the statute under consideration required the letting of the contract to the "lowest and best bidder," and the procedure adopted, which reserved some discretion to the authorities inviting bids, was approved.

In the cases, *State* v. *Toledo* (*Bd. of Ed.*) and *Polhamus* v. *Board of Ed.*, *supra*, the statute under consideration forbade acceptance of any collusive bid, and any but the "lowest responsible bid," and it was held—the nature of the subject-matters being at least partially noncompetitive—that a discretion might properly be reserved and exercised.

Shall we allow these precedents to emasculate the statute? Shall we swing wide the door of official discretion which experience teaches is too often but another name for graft and corruption? No corruption is charged or indicated in this case. But we are asked so to construe this section as to make it easy for dishonest officials to defraud the taxpayer. Probably no statute, however skillfully framed or wisely construed, can wholly prevent dishonest officials from following their bent. But graft can be made by law more difficult and dangerous, and the courts must be alert so to construe such laws as to give them the effect intended.

Even if the proposed construction of this law preserves the letter, it strangles the spirit and intent of it. Undoubtedly when the subject-

matter is practically noncompetitive under the ordinary procedure, it is useless to pursue the letter of that procedure, and if no really competitive procedure under the law can be devised, then there is nothing left but to abandon the principle in such cases, and procure the thing desired by direct negotiation, instead of competition. To the few instances where this is absolutely the case, Rev. Stat. 799 (Lan. 1763), and similar sections cannot apply. But the number of such instances must not be needlessly enlarged. And when materials of common use in ordinary construction are needed, it is idle to say that they are noncompetitive simply because it is possible to fix upon a variety of granite, or marble, that is produced in but one quarry, or a variety of wood or iron that is monopolized by a single dealer. If such a monopoly is to be utilized at all, its attendant evils can be avoided or minimized only by specifying alternatives of the same quality, or of equal excellence, and by then awarding the contract to the lowest bidder.

Summarized, our understanding of the law is, that wherever public authorities are by law required in letting contracts for construction, to invite sealed bids and to let the contract to the "lowest bidder," it follows:

First. That there must be opportunity afforded for *bona fide* competition wherever the nature of the construction makes it possible; and a specification of noncompetitive workmanship or material is unlawful in every case where such specification can reasonably be avoided.

Second. Upon the opening of the bids, the contract must be awarded to that bidder whose bid, without subsequent alteration or explanation, is, on its face, the lowest one that fulfills the terms of the invitation, unless all bids are rejected, or the nature of the subject-matter compels the exercise of discretion.

Third. When the contemplated construction is essentially and absolutely noncompetitive, because of its artistic nature, or is strictly monopolistic, because the function to be performed thereby is necessarily dependent upon a single means which is the subject of an exclusive patent, or franchise, or sole source of supply, then the principle of competition is, so far forth, inapplicable.

Fourth. When the contemplated construction is but imperfectly competitive, though not absolutely noncompetitive, as where the function to be performed is dependent upon some one of various monopolistic means, the principle of competition, so far as it can reasonably be made applicable, must be strictly pursued; but, in cases of that kind, after the application of the competitive principle has been exhausted,

State v. McKenzie.

a sound discretion may then be exercised in choosing the most economical means, all things considered, among those that are offered.

Applying these principles to the concrete case before us, it comes to this:

If this commission determines to build of granite without more particular specifications of variety or quality, it must so determine before asking for bids, and then let the contract, if at all, to the lowest bidder who comes within the specifications. If it determines to build of Pink Milford granite, it must likewise so determine beforehand. But if Pink Milford granite is a monopoly, so that specifying that material, alone precludes competition, then it should specify a sufficient number of alternative varieties, by name or fixed standard of quality, so that there may be actual competition, and then it should award the contract to the lowest bidder who comes within such specifications.

In the matter of general materials for a public building, no discretion as to the choice can lawfully be reserved until after the bids are opened, when the statute expressly requires, as it does here, that specifications shall be made in advance, and that the contract shall be let to the lowest bidder. To hold otherwise would be to strike at the very root and foundation of these requirements of the statute. For if the law does not apply in letter and spirit to gross raw materials like these, what is left? The law forthwith becomes a dead letter. But it is said that we held otherwise in *Emmert* v. *Elyria,* 27 O. C. C. 353, and that the Supreme Court affirmed that decision in *Emmert* v. *Elyria,* 74 Ohio St. 185. But an examination of that case will show that the point specially urged there was not suppression of competition, but the delegation by the council of its legislative power to an executive board. And though the opinions in both courts do incidentally refer to the merits of a procedure like that here adopted in stimulating competition when honestly pursued, yet the indorsement thereof by this court really turned on a curative act whereby the legislature had set the seal of its approval on this practice, as applied to street improvements. And the exact point here in question was not before the Supreme Court at all, in view of the finding of facts there considered. For aught there appearing the choice of materials may in fact have been determined before bids were invited.

This case, and those before cited, have, indeed, given us pause. But we hold that the reservation, by the commission, of the right to determine, after opening the bids, the materials to be used in constructing the Cuyahoga county courthouse is unwarranted and illegal. On the remaining point we entertain if possible, even less doubt. For though

the same difficulty arises with respect to the discretion reserved in the choice of the varieties of marble to be used for floors and other interior work, there is, in addition thereto, another irregularity. The successful bidder filed with his bid certain specimens of marble, as he was required to do. After the bids were opened, he and the other bidders were permitted to designate further specimens of marble as those which they were willing to use. Under circumstances which must have led Andrew Dall & Sons' representative to believe that he was thus designating the specimen chosen by the commission, although no such choice had then been formally made, he picked out a specimen of marble differing from any that his firm had filed, and upon the specimen thus designated, it is proposed now to enter into the contract here sought to be enjoined.

In *Herrmann* v. *State*, 5 Circ. Dec. 266 (11 R. 503), this exact procedure is condemned, and it is held in *Beaver* v. *Institution for Blind* (*Tr.*), 19 Ohio St. 97, that amendments and alterations of bids after the same are opened cannot be permitted. And because it was permitted in this case—for we cannot come to any other conclusion from the evidence—as well as because the commission reserved the choice of materials until after the bids were opened, the proposed contract must be permanently enjoined.

Our brother Burrows who sat in place of our brother Winch, is of opinion that the requirement of a corporate surety on the successful bidder's bond was unauthorized and oppressive; that the size and duration of the bond after completion of the contract are likewise unreasonable, and that the provision in regard to the monumental character of the building is indefinite and hence a deterrent to fair competition. But we do not found our judgment on these grounds.

**Marvin** and **Burrows, JJ.,** concur.